IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:11-CV-409-D

| | |
|---|---|
| CHERLYN A. WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

Cherlyn A. Williams ("Williams" or "plaintiff") appeals the final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability benefits ("benefits") and supplemental security income ("SSI"). Each party has filed a motion for judgment on the pleadings [D.E. 84, 88]. As explained below, the court denies the Commissioner's motion for judgment on the pleadings, allows plaintiff's motion, and remands this case for further proceedings.

I.

Williams applied for benefits and SSI on June 18, 2008, alleging a disability onset date of October 2, 2003, due to epilepsy. R. at 23, 242. Her applications were denied initially and upon reconsideration, and a request for a hearing was timely filed. Id. at 23, 128–29. On June 23, 2010, an Administrative Law Judge ("ALJ") held a hearing regarding Williams's applications for benefits and SSI. Id. at 36–57.

On July 13, 2010, the ALJ denied Williams's applications. Id. at 23–30. On August 24, 2010, Williams timely requested review by the Appeals Council. Id. at 19. On June 8, 2011, the

Appeals Council denied the request for review. Id. at 1–6. On August 4, 2011, Williams timely filed this action for judicial review [D.E. 1-2]. See 42 U.S.C. § 405(g).

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." Id. § 423(d)(1)(A); Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). The regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled. This process requires the ALJ to consider whether a claimant (1) is engaged in substantial gainful employment; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) possesses the residual functional capacity ("RFC") to return to his past relevant work; and, (5) if not, whether he can perform other work in light of his age, education, work experience, and RFC. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See, e.g., Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Pass, 65 F.3d at 1203.

Applying the five-step analysis, the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since October 2, 2003, the alleged disability onset date. R. at 25. At step two, the ALJ found that plaintiff had epilepsy, a medically determinable impairment that was severe within the meaning of the Regulations. Id.; see 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, however, the ALJ found that plaintiff's impairment did not meet or medically equal any of the listed impairments. R. at 25.

2

The ALJ next determined that plaintiff had the RFC to perform light work,[1] subject to the following limitations: (1) avoidance of exposure to dangerous machinery, tools, or implements, and of unprotected heights, ladders, and scaffolding; (2) performance of up to four-step operations; and, (3) only occasional variation in routine. Id. at 26. Based on this RFC, the ALJ found at step four that plaintiff was capable of performing her past relevant work as a bagger. Id. at 28. Alternatively, the ALJ found at step five that based on plaintiff's RFC, age, education, and previous work experience there were a significant number of jobs in the national economy that she could perform. Id. at 28–29. Accordingly, the ALJ concluded that plaintiff was not disabled. Id. at 29.[2]

II.

The court must uphold the Commissioner's decision so long as substantial evidence in the record supports the decision and the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); see Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (quotation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Under the substantial evidence standard, the court may not "re-weigh conflicting evidence, make credibility

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b); see U.S. Dep't of Labor, Dictionary of Occupational Titles, App. C § IV (4th ed. 1991), available at http://www.oalj.dol.gov/libdot.htm (last visited Sept. 20, 2012).

[2] This determination was effective for benefits through March 30, 2006, plaintiff's last date insured, see R. at 23, and for SSI through the date of the ALJ's decision, July 13, 2010.

3

Case 5:11-cv-00409-D   Document 91   Filed 09/20/12   Page 3 of 9

determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), superseded by regulation on other grounds, 20 C.F.R. § 416.927(d)(2). Before the court can determine whether a decision is supported by substantial evidence, it must determine whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. See, e.g., Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439–40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

Plaintiff contends that the ALJ's decision should be reversed because he failed at step three to explain why plaintiff did not meet or medically equal Listing 11.02, and because the ALJ should have found at step three that plaintiff did meet Listing 11.02. The court will address each of these challenges to the ALJ's decision in turn.

The listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing not only any substantial gainful activity, but any gainful activity at all. 20 C.F.R. §§ 404.1525(a), 416.925(a). Therefore, if a claimant's impairments meet or equal a listing, the claimant is disabled. Id. §§ 404.1520(d), 416.920(d).

An impairment meets a listing if it satisfies all the specified medical criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); see SSR 83-19, 1983 WL 31248, at *2–3 (1983). The claimant must prove that her impairment meets a listing. See Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

Even if an impairment does not meet the listing criteria, it can still satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. Sullivan, 493 U.S. at 531; see 20 C.F.R. §§ 404.1526(a),

4

Case 5:11-cv-00409-D   Document 91   Filed 09/20/12   Page 4 of 9

416.926(a) (providing that medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." Sullivan, 493 U.S. at 531 (citation omitted).

"[W]hen an ALJ finds that a claimant has a severe impairment and the record contains evidence of related 'symptoms [that] appear to correspond to some or all of the requirements of [a listing, the ALJ must] . . . explain the reasons for the determination that [the claimant's severe impairment] did not meet or equal a listed impairment.'" Jones ex rel. B.J. v. Astrue, No. 1:09CV45, 2012 WL 1267875, at *2 (M.D.N.C. Apr. 16, 2012) (unpublished) (quoting Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986) (alterations except first in original), M&R adopted, 1:09-cv-45-JAB-LPA, [D.E. 19] (May 22, 2012); cf. Kelly v. Astrue, No. 5:08-CV-289-FL, 2009 WL 1346241, at *5 (E.D.N.C. May 12, 2009) (unpublished) ("[T]he ALJ is only required to explicitly identify and discuss relevant listings of impairments where there is 'ample evidence in the record to support a determination' that an impairment meets or medically equals a listing." (citation omitted)).

In Cook, an ALJ determined that the plaintiff did not meet Listing 1.01, which concerns arthritis. That particular listing contained four subsidiary lists of impairments and the ALJ did not compare the plaintiff's symptoms to any of the four subsidiary lists. Cook, 783 F.2d at 1173. In ordering remand, the Fourth Circuit held,

> The ALJ should have identified the relevant listed impairments. He should then have compared each of the listed criteria to the evidence of Cook's symptoms. Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination.

Id.

As Cook illustrates, the ALJ generally is required not only to identify the relevant listing, but also to compare the claimant's symptoms to the listing's criteria. Fraley v. Astrue, Civil Action No. 5:07CV141, 2009 WL 577261, at *3 (N.D.W. Va. Mar. 5, 2009) (unpublished) ("When determining whether a claimant's specific injury meets or equals a listed impairment, an ALJ must explain his or her rationale. This requires an ALJ to compare the plaintiff's actual symptoms to the requirements of any relevant listed impairments in more than a 'summary way.'" (citations omitted)); Beckman v. Apfel, No. Civ.A. WMN-99-3696, 2000 WL 1916316, at *9 (D. Md. Dec. 15, 2000) (unpublished). However, in some cases, the point-by-point analysis is not necessary. "Meaningful review may be possible even absent the explicit step-by-step analysis set out in Cook where the ALJ discusses in detail the evidence presented and adequately explains his consideration thereof." Johnson v. Astrue, No. 5:08-CV-515-FL, 2009 WL 3648551, at *2 (E.D.N.C. Nov. 3, 2009) (unpublished). Thus, when other portions of an ALJ's decision make clear the listings the ALJ considered and the basis upon which the ALJ found that the claimant did not meet or equal them, the step-by-step analysis is not essential to judicial review. See Smith v. Astrue, 5:10-CV-399-FL, 2012 WL 928644, at *3 (E.D.N.C. Mar. 19, 2012) (unpublished).

Listing 11.02 provides,

> 11.02 Epilepsy—convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.
>
> > A. Daytime episodes (loss of consciousness and convulsive seizures) or
> >
> > B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.02. For a claimant to meet Listing 11.02, the convulsive epilepsy must be "documented by detailed description of a typical seizure pattern,

6

including all associated phenomena . . . ." Id.; see id., Listing 11.00(A). "Such description includes the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena. The reporting physician should indicate the extent to which description of seizures reflects his own observations and the source of ancillary information." Id., Listing 11.00(A). The seizure pattern may, as indicated, consist of daytime episodes, including loss of consciousness and convulsive seizures, or nocturnal episodes with residuals that interfere significantly with daytime activity. See id., Listing 11.02; Fowler v. Astrue, No. 3:11-cv-0442, 2012 WL 3046053, at *13 (S.D.W. Va. July 25, 2012) (unpublished).

In addition, the episodes must "occur[] more frequently than once a month in spite of at least 3 months of prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.02. Therefore, Listing 11.02's "criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment." Id., Listing 11.00(A). Objective clinical findings of the claimant's treating physician, including, specifically, blood levels of antiepileptic drugs, can ordinarily be used to determine adherence to prescribed antiepileptic therapy. Id. A claimant's compliance with medication therapy is central to meeting Listing 11.02:

> As a result of modern treatment which is widely available, only a small percentage of epileptics, who are under appropriate treatment, are precluded from engaging in substantial gainful activity (SGA). Situations where the seizures are not under good control are usually due to the individual's noncompliance with the prescribed treatment rather than the ineffectiveness of the treatment itself.

SSR 87-6, 1987 WL 109184, at *1 (1987).

The ALJ failed to adequately address Listing 11.02. The ALJ's determination at step three does not identify any listings or even a category of listings that the ALJ considered. See R. at 25. Nor did the ALJ explain his determination. Id. Rather, the ALJ merely stated, "The

7

Case 5:11-cv-00409-D   Document 91   Filed 09/20/12   Page 7 of 9

claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 . . . ." Id.

The record contains evidence corresponding to Listing 11.02's criteria. The ALJ found, at step two, that the record shows Williams to have epilepsy. Id. As the ALJ's own review of the medical evidence shows, there is evidence that Williams's epilepsy is convulsive in nature. Id. at 26–28. There also is evidence that Williams had seizures with the frequency required by Listing 11.02, see, e.g., id. at 397, 771, 787, and seizures while at therapeutic blood levels of anticonvulsive medication. See, e.g., id. at 618, 623, 700, 787.

To be sure, the ALJ reviewed some of the medical evidence, some of which is responsive to the criteria in Listing 11.02 and some of which suggests that she does not meet the criteria. See id. at 26–28. Nonetheless, this review does not clarify the ALJ's listing analysis. In addition, the ALJ makes findings that concern the same matters as certain criteria. For example, the ALJ found that "claimant's seizures are well-controlled with medications," but that she "was not compliant with treatment." Id. at 28. But these findings are more general than the specific criteria of Listing 11.02. On this record, the ALJ should have compared the evidence to the specific criteria of Listing 11.02. See Wright v. Astrue, Civil No. SKG-10-3547, 2012 WL 1668897, at *6 (D. Md. May 10, 2012) (unpublished); Ketcher v. Apfel, 68 F. Supp. 2d 629, 645–47 (D. Md. 1999).[3]

The ALJ's failure to adequately address Listing 11.02 precludes meaningful review. Accordingly, this case is remanded for further proceedings. See Abbott v. Astrue, Civil Action No. 4:10-CV-2253-TER, 2012 WL 761587, at *4 (D.S.C. Mar. 8, 2012) (unpublished); Bowman

---

[3] The transcript of the hearing before the ALJ does not otherwise shed light on the ALJ's listing analysis. When plaintiff's counsel mentioned Listing 11.02 in argument at the start of the hearing, the ALJ asked what frequency of seizures it required and counsel told him. R. at 38–39. Listing 11.02 was not mentioned again at the hearing.

v. Astrue, Civil Action No. 1:09CV137, 2011 WL 744767, at *18 (N.D.W. Va. Jan. 27, 2011) (unpublished), M&R adopted, 2011 WL 736806 (Feb. 23, 2011) (unpublished). In doing so, the court declines Williams's invitation to hold that she met or medically equaled Listing 11.02. Whether Williams meets or medically equals Listing 11.02 presents contested factual issues, including the extent and significance of her medication noncompliance. The Commissioner, not this court, must resolve the disputed factual issues. Moreover, this court offers no opinion on the ultimate resolution of the dispute concerning Listing 11.02.

III.

For the foregoing reasons, plaintiff's motion for judgment on the pleadings [D.E. 84] is ALLOWED, the Commissioner's motion for judgment on the pleadings [D.E. 88] is DENIED, and this case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

SO ORDERED. This **20** day of September 2012.

JAMES C. DEVER III
Chief United States District Judge